José Reguero González, demandante y apelado, *v.* Manuel Jiménez, demandado y apelante.

No. 5929.—*Sometido:* Marzo 7, 1933. *Resuelto:* Marzo 21, 1933.

*González Fagundo & González Jr.*, abogados del apelante; *F. Cervoni Gely,* abogado del apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Es ésta una acción en cobro de servicios profesionales en la cual se alega que allá por el mes de julio de 1928, el demandante, Dr. José Reguero González, fué requerido por el demandado, Manuel J. Jiménez, para que asistiera a su esposa Carmen Díaz que estaba ya próxima a dar a luz y entregada a la crisis del parto; que el demandante, accediendo al requerimiento del demandado, se trasladó al hogar del Sr. Jiménez, en el barrio de Tomás de Castro de Caguas, donde empezó a prestar sus servicios a la señora Díaz, cuyo estado de gravedad se hacía más intenso por la circunstancia de ser una primípara, de estar en presencia de un parto distócico, desarrollado en el campo, habiéndose visto en la necesidad de insuflar personalmente con su propia boca aire en los pulmones de la recién nacida para estimular así la función pulmonar y evitar una muerte segura por asfixia, salvando de esta manera la vida de la madre y de la hija; que después de los servicios prestados a la señora Díaz en la noche del parto el demandante tuvo necesidad de seguirle prestando sus atenciones por espacio de dos meses más o menos, yendo a visitarla al campo una vez al día por lo menos y haciéndole dos y tres visitas diarias cuando lo requerían las circunstancias, algunas veces de noche, para lo cual tuvo que descuidar su clientela, concretándose casi exclusivamente a dicha señora, y luego de réstablecida del parto volvió a ser llamado varias veces para prestar servicios médicos a dicha señora y a su hija, cuyos servicios valen razonablemente la suma de $5,000.

El demandado contestó la demanda negando que el estado de su esposa fuera grave, que el demandante insuflara aire en los pulmones de la recién nacida para evitarle la muerte por asfixia y que prestara su asistencia a la parturienta por espacio de dos meses, yendo a visitarla una vez al día y hacién-

dole dos o tres visitas diarias cuando lo requerían las circunstancias. Negó también el demandado que los servicios prestados por el demandante valieran razonablemente $5,000, y en contrario sostuvo que esos servicios no valen más de $150; que el demandante, por ser un primo político, no le reclamó cantidad alguna después de haber asistido a su esposa, habiéndole entregado el demandado ciertos bienes que tienen un valor superior a $500.

La corte de distrito dictó sentencia condenando al Sr. Jiménez a satisfacer al demandante la suma de $800 por concepto de honorarios profesionales y además las costas de este litigio. El demandado apelante alega en primer término que la corte inferior cometió error al permitir que el abogado del demandante hiciera la siguiente pregunta: "¿Cuántas habitaciones tenía para alojar enfermos esa clínica?" Esta pregunta se formuló después de haber declarado el Dr. Reguero que tenía una clínica establecida en Caguas. El demandado se opuso a que se admitiera la mencionada pregunta por considerarla inmaterial. Así lo creemos también nosotros. Y puesto que se trata de una evidencia inmaterial que no perjudica al demandado, su admisión no puede constituir un error que justifique la revocación de la sentencia.

Se alega además que la sentencia es contraria a la evidencia presentada y que esta evidencia fué apreciada erróneamente por la corte de distrito.

La corte inferior hace un resumen bastante completo de la declaración del Dr. Reguero, que nos permitimos transcribir. Declara el demandante que "en el mes de julio de 1928, como entre 7 u 8 de la noche, fué requerido por el demandado para prestarle servicios urgentes a su esposa, quien se encontraba grave, habiéndose trasladado el demandante inmediatamente a casa del demandado fuera de la ciudad; encontrando que la esposa del demandado estaba de parto, con todas las dificultades que presenta esta situación en una primípara, habiéndose esforzado por obtener la correspondiente dilatación infructuosamente, lo que hizo difícil la aplicación

de fórceps, habiendo podido al fin hacer la extracción del feto ya entrada la mañana; que éste no respiraba, siendo necesario al demandante aplicarle su propia boca a la nariz y la boca de la criatura para insuflarle aire en los pulmones, operación ésta que envolvía serios riesgos para la salud del demandante, habiendo logrado establecer la respiración de la criatura y ordenando luego que no se dejara dormir de modo alguno, procediendo a suplirle artificialmente oxígeno a sus pulmones; que durante toda la noche y hasta el nacimiento de la criatura estuvo el demandante prestando continuamente sus servicios a la esposa del demandado, cuya casa abandonó a las diez de la mañana aproximadamente; que mientras se encontraba en su casa, bañándose, fué requerido por el demandado porque estaba grave su esposa, y al llegar el demandante a la casa del demandado encontró que la esposa de éste presentaba un estado de subinvolución del útero, había sufrido gran hemorragia y tenía de 150 a 160 pulsaciones por minuto aproximadamente, demostrando irregular funcionamiento del corazón tratándose de un caso grave por lo que permaneció el demandante hasta la tarde en la casa del demandado, la que abandonó para regresar a la suya y volver de nuevo a continuar prestándole sus servicios a la esposa del demandado; que esta situación continuó igual al día siguiente, presentándose al tercer día, en la esposa del demandado, loquios fétidos, que al ser examinados, hicieron sospechar la posibilidad de una fiebre puerperal; que el demandante procedió entonces a prestar a la esposa del demandado los servicios requeridos en tales casos, haciéndole lavados intrauterinos durante varias semanas, hasta que desapareció la fiebre, habiendo sufrido la esposa del demandado, además, inapetencia y frecuentes mareos, siendo atendida por el demandante durante algún tiempo, en cuyo transcurso padeció también de una infección palúdica atendida por el demandante durante 6 u 8 días; que al mismo tiempo el demandante prestó atención médica a la criatura nacida por haberse presentado a ésta una conjuntivitis estreptocócica, de

5 ó 6 días de duración, y por habérsele infectado una pequeña herida que sufrió en la cabeza con motivo de la aplicación de los fórceps y otras afecciones corrientes en los recién nacidos; que habida cuenta de la anormalidad del parto y la gravedad de la esposa del demandado durante el período posterior al mismo el demandante tuvo que abandonar completamente la atención de su clientela mientras duró su gravedad, habiendo hecho el demandante todas las visitas a la casa del demandado, para prestarle los expresados servicios, en su propio automóvil.''

El demandado declara que al llegar a su casa el Dr. Reguero formuló una receta, le puso una inyección a la parturienta y que entonces el demandado y el médico se sentaron en el balcón esperando los efectos de la medicina; que al poco tiempo el doctor le puso otra inyección a la paciente y que al cabo de la hora, ya próxima a nacer la criatura, el médico se sentó al borde de la cama, y al ocurrir el alumbramiento, le cortó el ombligo a la criatura y le puso otra inyección a la señora; que el doctor no tuvo que aplicar fórceps ni su esposa tuvo hemorragia; que la niña no se hizo ninguna herida, que no tuvo conjuntivitis y que el doctor estuvo en su casa como hasta las once de la noche. Añade que su esposa no tuvo una infección puerperal; que posteriormente el médico continuó yendo a su casa, pero no para asistir a la señora, porque ésta estaba bien; que el doctor le dijo que su trabajo no valía nada; que el demandado le cuidó al doctor en su finca una vaca por espacio de ocho meses y que le mandaba cinco cuartillos de leche, a pesar de que la vaca sólo daba un litro; que le dió al doctor un torito de pura raza Holstein que valdría como $500 y una novilla negra cruzada; que después del parto el doctor y el demandado tuvieron una amistad muy íntima y que el primero visitaba su casa con frecuencia en compañía de su esposa.

Dolores Pérez de Matos, testigo del demandante, declara que asistió como enfermera a la Sra. Carmen Díaz; que el Dr. Reguero tuvo toda la noche bajo su observación a la par-

turienta, administrándole medicinas y haciendo el trabajo necesario al momento ése; que le aplicó varias veces los fórceps; que la niña nació por la mañana, aunque no recuerda la hora; que dicha niña nació asfixiada y el doctor le dió respiración artificial con su propia boca; que estuvo asistiendo la señora como catorce a quince días y que durante ese tiempo vió que el doctor iba a la casa, en ocasiones dos veces al día; que la testigo es especialista en partos; que el doctor llegó a la casa un sábado por la noche y que la niña nació el domingo por la mañana; que no recuerda que la señora tuviera fiebre puerperal; que le hacía una irrigación y lavado externo diariamente a la paciente; que cree saber lo que es una fiebre puerperal y que en este caso cree que no la hubo; que la testigo no puede saber lo que tenía, sino el médico; que no recuerda que la niña tuviera oftalmía o conjuntivitis; que tuvo una pequeña equimosis en la frente, pero que no recuerda que hubiera heridas grandes y que a decir verdad no cree que la enferma tuviese infección puerperal.

La declaración de la enfermera corrobora lo declarado por el Dr. Reguero con respecto a la asistencia prestada a la señora durante la noche del parto.

En cuanto a los servicios prestados después, la testigo dice que el Dr. Reguero visitaba la casa, en ocasiones dos veces al día. Parece natural que el Dr. Reguero visitase a la señora, prestándole las atenciones y cuidados que se acostumbran en los primeros días que siguen a un parto. Así lo explica la testigo, quien dice que "eso todos los médicos lo usan después que tienen un caso." El testimonio de esta testigo se recomienda por su espíritu de imparcialidad. Expone los hechos franca y abiertamente, lo mismo cuando favorece que cuando perjudica al demandante. La corte declara que se han probado los hechos del parto en la forma en que fueron expuestos por el Dr. Reguero. Nosotros añadimos que también se probaron estos hechos en la forma en

que fueron relatados por la enfermera Dolores Pérez Matos. La testigo y el demandante coinciden en la exposición de los hechos ocurridos la noche del alumbramiento. En cuanto a los servicios prestados después del parto, Dolores Pérez no corrobora todo lo dicho por el demandante, pero declara que éste visitaba a la señora, en ocasiones dos veces al día. Sin embargo, los honorarios concedidos al demandante en la sentencia apelada nos parecen excesivos. La corte inferior aprecia en $500 los servicios prestados durante la noche del parto y en $300 los que el demandante prestara después a la señora. Creemos que toda la asistencia médica prestada por el Dr. Reguero a la esposa del demandado, teniendo en cuenta la propia declaración del Dr. Reguero y el testimonio de la enfermera Dolores Pérez, así como toda la prueba practicada, puede valorarse razonablemente en la cantidad de $400.

Alega el demandado que entregó ciertos bienes semovientes al demandante, pero no dice en qué concepto, y no surge de la prueba que estos bienes se entregaran, si es que se entregaron, para pagar los servicios profesionales del Dr. Reguero. Sobre este particular, la corte inferior, dice que no habiéndose demostrado la existencia de contrato alguno en relación a dichos bienes, se siente constreñida a no considerar esta prueba, sin que se entienda que prejuzga las relaciones que puedan existir entre el demandante y el demandado con motivo de la entrega de dichos bienes, y sin que tampoco tengan sus manifestaciones el alcance de estimar probada dicha entrega.

En cuanto al pronunciamiento sobre costas, el demandante declara que pasó una cuenta al demandado fijando la cuantía de sus honorarios en $5,000. El demandado en la contestación alega que los servicios no valen más de $150 y que además entregó al demandante bienes que tienen un valor superior a $500. La suma reclamada por el Dr. Reguero es a todas luces exagerada. Si el demandante hubiese exigido

desde el primer momento el pago de una suma razonable, no tendría justificación ni excusa la negativa del demandado a satisfacer la cantidad reclamada. No puede decirse que el Sr. Jiménez incurriera en temeridad al negarse a satisfacer una suma que. excede los límites de lo ordinario.

*Opinamos que debe modificarse la sentencia apelada, condenando al demandado a pagar $400 al demandante, sin especial condenación de costas.*